# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI

NEW CINGULAR WIRELESS PCS          )
LLC, d/b/a AT&T MOBILITY,           )
                                    )
                     Plaintiff,     )
                                    )
          v.                        )   Case No.
                                    )
ST. PETERS, MISSOURI,               )
One St. Peters Centre Blvd.         )
St. Peters, MO 63376,               )
                                    )
                     Defendant.     )

## COMPLAINT

Plaintiff New Cingular Wireless PCS LLC d/b/a AT&T Mobility ("AT&T"), for its Complaint against the City of St. Peters, Missouri (the "City"), states as follows:

1.      This action arises out of the unlawful denial of AT&T's application for a special use permit to construct a wireless communications facility on real property located in St. Peters, Missouri.

2.      AT&T provides wireless voice and data products and services to customers nationwide. By using the latest available wireless telecommunications technology, AT&T benefits its customers and citizens nationwide by providing improved cellular coverage, capacity, and service quality. AT&T also operates FirstNet, a single, interoperable network for public safety agencies and first responders established by Congress.

## Jurisdiction and Venue

3.      This action arises under the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7) (the "TCA"), and the

- 1 -

Missouri Uniform Wireless Communications Infrastructure Deployment Act, Mo. Rev. Stat. §§ 67.5090 *et seq.* (the "Siting Statute").

4.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) because AT&T brings suit for violation of 47 U.S.C. § 332(c)(7)(B)(v) and 28 U.S.C. § 1332 (diversity of jurisdiction) because the City is a resident of the State of Missouri and AT&T is a Delaware corporation headquartered in Georgia and because the amount in controversy exceeds $75,000.00.

5.    This Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over AT&T's claims made pursuant to Missouri law because those state law claims are so related to the federal claims as to form part of the same case or controversy.

6.    Venue is proper in this Court under 28 U.S.C. § 1391 because the events giving rise to this action occurred in this District and the City is located in this District.

### Parties

7.    AT&T is a Delaware limited liability company authorized to do business in Missouri and provides wireless telecommunications services in Missouri.

8.    Defendant City of St. Peters, Missouri is a political subdivision of the State of Missouri.

### Legal Background

9.    The TCA governs federal, state, and local government regulation of the siting of personal wireless service facilities such as the one at issue in this case.

10.    The purpose of the TCA is to "make available, so far as possible, to all the people of the United States . . . a rapid,  efficient,  Nation-wide, and world-wide wire  and  radio  communications  service  with  adequate  facilities  at  reasonable charges,  for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of wire and radio communications . . . ." 47 U.S.C. § 151.

11.    The TCA preempts state and local decisions that  "prohibit or have the effect of prohibiting the provision of personal wireless services" or "unreasonably discriminate among providers of functionally equivalent services" and requires that state and local decisions denying requests to place personal wireless service facilities, such as cell towers, be supported by substantial evidence contained in a written record. 47 U.S.C. § 332(c)(7)(B)(i) & (iii).

12.    The TCA provides that  "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with [the TCA] may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v).

13.    The TCA requires that the Court "shall hear and decide such action on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v).

14.    The  Missouri  Siting  Statute  prohibits  a  zoning  authority  from "evaluat[ing]  an applicant's business decisions with respect to its designed service,

customer demand for service, or quality of its service to or from a particular area or site." RSMo § 67.5094(1).

15.     It further prohibits a zoning authority from "evaluat[ing] an application based on the availability of other potential locations for the placement of wireless support structures or wireless facilities...." RSMo § 67.5094(2).

16.     The Siting Statute requires that an application be evaluated "in light of its conformity with applicable local zoning regulations." RSMo § 67.5096.4(1).

17.     The Siting Statute prohibits decisions that "[d]iscriminate or create a preference on the basis of ownership … of any property, structure, or tower when … evaluating applications." RSMo § 67.5094(15).

18.     The Siting Statute permits a "party aggrieved by the final action of any authority … by its affirmatively denying an application" to "bring an action for review in any court of competent jurisdiction within this state." RSMo § 67.5096.6.

## Factual Allegations

19.     AT&T, through its agent Network Real Estate, LLC ("NRE"), entered into a ground lease with Gateway Church of the Nazarene for a sixty by sixty foot. compound on the church's 6.7-acre parcel, which is zoned R-1 Single-Family Residential but developed with a non-residential use.

20.     AT&T's RF engineers identified a significant coverage and capacity gap along I-70/Salt Lick Road and established a search ring depicting where a new facility must be placed so that the new facility can effectively communicate with others in AT&T's network and provide adequate coverage and service to its customers in the area.

21.     AT&T and NRE determined that alternative parcels north of I-70 or west of Salt Lick Road were unavailable or technically infeasible.

22.     On May 14, 2025, AT&T filed a complete application (SU-25-03) (the "Application") for a special use permit to construct a 100-foot camouflaged monopine wireless support structure (the "Proposed Tower") at 250 Salt Lick Road (the "Property"), including all required documentation and fees. A true and accurate copy of the Application is attached as Exhibit A to the Denial (as that term is defined below). *See* Exhibit ("Ex.") 1 at Ex. A.

23.     AT&T's Application satisfied all requirements under the City's local zoning ordinances for approval.

### I.     The P&Z Hearing

24.     The City's staff deemed the Application complete and scheduled a Planning & Zoning Commission ("P&Z") hearing for July 2, 2025.

25.     At the P&Z hearing, City staff recommended approval, confirming compliance with all zoning requirements.

26.     City staff also provided a written recommendation of approval noting both that the Application satisfied all of the zoning requirements in the City's ordinances and would meet all of the requirements for a special use permit. *See* Ex. 1 at Ex. C.

27.     The recommendation noted that the impact on the surrounding area would be minimal and that the Proposed Tower would allow AT&T to provide improved coverage and service to the community.

28.     AT&T's representative testified at the hearing that there was a significant need for the Proposed Tower because AT&T was experiencing dropped calls along Salt Lick Road, east and west of I-70, as a result of strained capacity on the existing facilities in the area.

29.     While there was public opposition to the Application, that opposition was limited to generalized, unsupported concerns about aesthetics, the effects of RF emissions, property values, and not-in-my-back yard ("NIMBY") requests to move the facility somewhere else.

30.     AT&T's representative responded to the opposition by explaining that AT&T did an extensive search of other locations and existing facilities in the area, but there was no feasible alternative to the Property. He further explained that the Proposed Tower must be precisely placed within a small geographic area to permit the Proposed Tower to effectively communicate with the other facilities on AT&T's network and remedy to coverage and capacity issues in the area.

31.     The P&Z voted 6-3-1 to recommend approval. *See* Ex. 1 at Ex. D.

## II.    The Board of Aldermen Hearing

32.     On July 24, 2025, the Board of Aldermen (the "Board") held a public hearing on the Application.

33.     At the meeting, a representative for AT&T presented evidence in support of the Application.

34.     Specifically, the representative noted the stealth monopine design of the Proposed Tower and offered four different designs the City could choose from so the facility would be tailored to the City's preferences.

35.     The representative explained that AT&T was providing a paired site analysis that proves there is no impact on property values because of proximity to a telecommunications facility.

36.     The representative presented testimony regarding the need for the Proposed Tower, explaining that once AT&T reaches a threshold of five percent of calls being dropped in an area, it begins the process of developing a new facility. That threshold was reached in the City, and AT&T must construct a telecommunications facility to relieve capacity strain on existing towers and to remedy a significant gap in AT&T's coverage and issues with its capacity in the area.

37.     The representative testified that AT&T had considered other locations for the needed facility but that this was the only viable location.

38.     Aldermen asked questions about the placement of the Proposed Tower, the cost of the lease, whether the Proposed Tower could be moved closer to the church, and the need for the Proposed Tower.

39.     Andrew Baker, a real estate appraiser, then presented a cell tower value impact study. He explained that based on his paired sales analysis of single-family homes located adjacent to cell towers in the local market, proximity to a cell tower does not have any impact on real estate values of nearby properties.

40. Residents spoke in opposition during the hearing, again raising generalized and unsupported concerns about property values, the health effects of RF waves, and NIMBY request to place the Proposed Tower somewhere else.

41. No evidence was presented to contradict the testimony of AT&T's representative or Mr. Baker.

42. After the bill for approval of the Application was introduced, one Alderman noted that there was no legal basis for denial of the Application and explained that denial could result in a lawsuit. He further noted that AT&T's "odds of … winning the lawsuit would be justifiable."

43. The Board passed a procedural motion to request the applicant consult with the church about moving the tower 100 feet west.

44. The Board then voted 3–5 to deny the Application.

45. No contemporaneous findings were announced, but the minutes reflect the denial and reference the Board's earlier motion and residents' objections.

46. On July 25, 2025, the City notified AT&T that formal Findings of Fact and Conclusions of Law would be drafted for the August 14, 2025 Board meeting.

47. On August 14, 2025, the Board approved written findings denying the Application and the minutes of the July 24 hearing.

48. The written denial ("Denial") was delivered August 14, 2025. The Denial is attached as Exhibit 1.

## The City's Findings and Conclusions

49. In its written Findings of Fact and Conclusions of Law dated August 14, 2025, the City found:

A. The Property is located in the R-1 Single-Family Residential District but is improved with a church and related parking lot, making it eligible for a wireless support structure via special use.

B. The Applicant "failed to present substantial evidence that the City's denial of the Proposed Special Use permit would prohibit, or have the effect of prohibiting, the provision of personal wireless services."

C. The Applicant "failed to present substantial evidence that the Proposed Special Use would increase service or improve service."

D. The Applicant "failed to present any substantial evidence of any ownership, leasehold interest or other right or authorization for Applicant to develop or otherwise use the Property."

E. The adjacent 1.43-acre parcel, also owned by the church, is vacant R-1 land; the City found that setbacks generated by the tower would "inhibit" future residential development of that parcel.

F. Approving the Proposed Special Use would "limit the ability to develop the Adjacent Property in accordance with the underlying zoning district regulations because the Proposed Special Use will limit the ability to develop the same," and thus "adversely affect the immediate neighborhood."

50. The City concluded that the Application should be denied based on these findings.

### COUNT I—VIOLATION OF THE TELECOMMUNICATIONS ACT EFFECTIVE PROHIBITION (47 U.S.C. § 332(c)(7)(B)(i)(II))

51.　AT&T incorporates by reference the allegations above.

52.　Local authority over zoning and land use matters cannot be used to "prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

53.　There is a significant gap in AT&T's wireless service in the Salt Lick/I-70 corridor that is resulting in unacceptable levels of dropped calls.

54.　The Proposed Tower is necessary to remedy that gap and to relieve strained capacity on other towers in AT&T's network.

55.　AT&T's proposed facility is the least intrusive and only viable means to remedy that gap.

56.　The church would not consent to movement of the Proposed Tower closer to its building because doing so would impede its own development plans.

57.　The City's Denial leaves the gap in coverage and capacity strain unremedied and prohibits or has the effect of prohibiting the provision of personal wireless services in violation of federal law.

58.　The Denial has caused and will continue to cause AT&T irreparable harm.

59.　AT&T does not have an adequate remedy at law.

60.　AT&T is entitled to injunctive relief under the TCA ordering the County to approve AT&T's Application and to provide all of the permits necessary to install, operate, and maintain the Proposed Tower.

## COUNT II—VIOLATION OF THE TELECOMMUNICATIONS ACT
## LACK OF SUBSTANTIAL EVIDENCE (47 U.S.C. § 332(c)(7)(B)(iii))

61.    AT&T incorporates by reference the allegations above.

62.    The TCA provides that  "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless services facilities shall be in writing and **supported by substantial evidence** contained in a written record." 42 U.S.C. § 332(c)(7)(B)(iii) (emphasis added).

63.    The bases for denial must be grounded in state law or local regulations.

64.    The bases for denial cannot violate any state, local, or federal law.

65.    The City's Denial is not supported by substantial evidence in a written record:

A.    AT&T submitted testimony that there was a need for the Proposed Tower because of capacity issues, a significant gap in coverage, and an unacceptable number of dropped calls in the area. AT&T also provided testimony that it had considered alternative locations to remedy those issues and the Property was the only viable location for the Proposed Tower. No evidence was provided to contradict this testimony. Additionally, the City's zoning ordinances do not require an Applicant prove effective prohibition for approval of a special use application. Accordingly, the City's basis for Denial, that AT&T did not provide evidence of an effective prohibition of service, is false and not supported by substantial evidence.

B.    AT&T presented unrebutted testimony that the Proposed Tower would resolve capacity issues and improve coverage and service in the area. The City's basis for denial, that AT&T "failed to present substantial evidence that the Proposed Special Use would increase service or improve service," is false and not supported by substantial evidence.

C.    AT&T similarly presented testimony that it has a lease with the church for placement of the Proposed Tower on the Property. There was no evidence presented to support the City's contention that AT&T "failed to present any substantial evidence of any ownership, leasehold interest or other right or authorization for Applicant to develop or otherwise use the Property." Indeed, although questions were improperly raised at the July 24 meeting about the price of the lease between AT&T and the church, there were no concerns raised about AT&T's authority to place a facility on the property under that lease. That basis is also not supported by substantial evidence.

D.    The adjacent 1.43-acre parcel, also owned by the church, is vacant R-1 land. The City claimed that setbacks from the Proposed Tower would "inhibit" future residential development on this parcel. However, no evidence was presented to support this claim, making any alleged impact speculative and unsupported—let alone by substantial evidence. Indeed, the City admits AT&T's Proposed Tower satisfies all setback requirements for approval of the Application. In contrast, AT&T

submitted unrebutted expert testimony and studies demonstrating that the tower would not negatively affect the value of adjacent parcels. Moreover, since the church owns both the subject Property and the adjacent parcel, it is in the best position to determine whether AT&T's use would be adverse to its own interests. Finally, City staff noted that the Proposed Tower would be screened from view and would not impact nearby properties. Accordingly, the City's final two reasons for denial lack substantial evidentiary support.

66. Finally, as described *infra*, the Denial violates state law. This violation is independently a violation of the TCA's requirement that the Denial be supported by substantial evidence.

67. The Denial is, therefore, not supported by substantial evidence.

68. The Denial has caused and will continue to cause AT&T irreparable harm.

69. AT&T does not have an adequate remedy at law.

70. AT&T is entitled to injunctive relief under the TCA ordering the County to approve AT&T's Application and to provide all of the permits necessary to install, operate, and maintain the Proposed Tower.

### COUNT III—VIOLATION OF THE TELECOMMUNICATIONS ACT UNREASONABLE DISCRIMINATION (47 U.S.C. § 332(c)(7)(B)(i)(I))

71. AT&T incorporates by reference the allegations above.

72. The TCA prohibits a local zoning authority from unreasonably discriminating among providers of functionally equivalent services.

73. Upon information and belief, the City has approved at least twenty-five similar towers adjacent to residential neighborhoods.

74. The City did not, upon information and belief, consider the impact of those towers on the hypothetical development of adjacent parcels.

75. AT&T provides a functionally equivalent service to the telecommunications carriers with equipment on those other facilities.

76. The City's Denial of AT&T's Application constitutes unreasonable and unlawful discrimination among providers of functionally equivalent services.

77. The Denial has caused and will continue to cause AT&T irreparable harm.

78. AT&T does not have an adequate remedy at law.

79. AT&T is entitled to injunctive relief under the TCA ordering the County to approve AT&T's Application and to provide all of the permits necessary to install, operate, and maintain the Proposed Tower.

## COUNT IV—VIOLATION OF THE MISSOURI UNIFORM WIRELESS COMMUNICATIONS INFRASTRUCTURE DEPLOYMENT ACT
### (Mo. Rev. Stat. §§ 67.5094, 67.5096)

80. AT&T incorporates by reference the allegations above.

81. The Missouri Siting Statute provides that a zoning authority shall not "evaluate an applicant's business decisions with respect to its designed service, customer demand for service, or quality of its services to or from a particular area or site." RSMo § 67.5094(1).

82. The City denied the Application, in part, because it determined there was no evidence of effective prohibition of service or a need for the Proposed Tower.

83.     These bases explicitly evaluate the Application based on the quality of and customer demand for AT&T's services in the area and AT&T's business decisions with respect to its designed service.

84.     The Missouri Siting Statute also provides that a zoning authority shall not "[e]valuate an application based on the availability for other potential locations for the placement of wireless support structures or wireless facilities...." RSMo § 67.5094(2).

85.     The City's requirement that AT&T consider alternative placement of the Proposed Tower on the Property violates this provision.

86.     The City denied the Application based on its perceived impact on the future development of adjacent parcels, despite acknowledging that AT&T met all required setbacks. This reasoning stems from the City's preference that AT&T relocate the Proposed Tower farther from the Property lines. As such, the Denial reflects an evaluation of the Application based on the availability of alternative locations in violation of the Siting Statute.

87.     The Board of Aldermen questioned AT&T about the need for the Proposed Tower, alternative locations for the Proposed Tower, and AT&T's lease agreement with the church. These questions evidence an evaluation of the Application on the bases prohibited by the Siting Statute.

88.     The Siting Statute also provides that "an authority shall not[] [d]iscriminate or create a preference on the basis of ownership, including ownership

by the authority, of any property, structure, or tower when … evaluating applications." RSMo § 67.5094(15).

89.   As described *supra* in in Count III, the City discriminated between AT&T and other telecommunications providers by considering its impact on speculative development of adjacent properties.

90.   Finally, the Siting Statute requires that the City review the Application "in light of its conformity with applicable local zoning regulations." RSMo § 67.5096.4(1). As set forth *supra* in Count II, the City's reasons for denial are not grounded in local zoning regulations, which is a violation of the Siting Statute.

91.   The Denial, therefore, violates the Siting Statute.

92.   The Denial has caused and will continue to cause AT&T irreparable harm.

93.   AT&T does not have an adequate remedy at law.

94.   AT&T is entitled to injunctive relief ordering the County to approve AT&T's Application and to provide all of the permits necessary to install, operate, and maintain the Proposed Tower.

## COUNT V—ADMINISTRATIVE REVIEW
### (Mo. Rev. Stat. § 536.100)

95.   AT&T incorporates by reference the allegations above.

96.   The Denial of the Application is a final decision in a contested case which is entitled to judicial review pursuant to RSMo § 536.100.

97. AT&T presented the City with substantial evidence that the Proposed Tower satisfied the requirements for zoning and for the issuance of a special use permit.

98. The City's staff and P&Z Commission both found that AT&T's Application satisfied all requirements for approval.

99. As set forth *supra* in Counts II and IV, the reasons provided for the Denial are unsupported and illegal.

100. The Denial improperly prohibits AT&T from proceeding with the construction of the Proposed Tower.

101. The Denial is illegal because it is (a) unsupported by competent and substantial evidence upon the whole record, (b) is arbitrary, capricious, and unreasonable, and (c) involves an abuse of discretion.

102. AT&T has exhausted all available remedies under applicable administrative review laws and ordinances and requests judicial review of this decision.

## PRAYER FOR RELIEF

WHEREFORE, AT&T respectfully requests that the Court grant it relief as follows:

1. Permit expedited review of the matters set forth in the Complaint;

2. Enter an order declaring the Denial violates and is preempted by the TCA, the Siting Statute, and RSMo § 536.100;

3. Enter an order requiring the City to approve AT&T's Application and authorize AT&T to install its Proposed Tower on the Property and to

issue all other permits required to install, operate, and maintain the Proposed Tower or an order that the Application is deemed approved and that AT&T may immediately begin construction and operation of the Proposed Tower; and

4. Order such other relief as the Court deems appropriate.

Dated: August 22, 2025                    Respectfully submitted,

                                          By: */s/ Sasha D. Riedisser*
                                              Luke G. Maher
                                              Sasha D. Riedisser
                                              Norton Rose Fulbright US LLP
                                              7676 Forsyth Blvd., Suite 2230
                                              St. Louis, Missouri 63105
                                              Telephone: (314) 505-8800
                                              Facsimile: (314) 505-8899
                                              Luke.maher@nortonrosefulbright.com
                                              Sasha.riedisser@nortonrosefulbright.com

                                          *Attorneys for Plaintiff*